UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATRINA MACK,<br>　　Plaintiff<br><br>v.<br><br>SUFFOLK COUNTY, RICHARD J.<br>ROUSE, in his individual capacity, JANE<br>DOE, in her individual capacity, AND<br>the CITY OF BOSTON,<br>　　Defendants | CIVIL ACTION NO. 98-12511NG |

## SUFFOLK COUNTY DEFENDANTS' SUR-REPLY IN
## OPPOSITION TO CLASS CERTIFICATION

On October 19, 1999, the Plaintiff filed a Reply Memorandum in response to the Defendans' Opposition to the Plaintiff's Motion for Class Certification. The Defendants rely upon their Opposition to Class Certification in refutation of the Plaintiff's Reply Memorandum. However, the Defendants are compelled to respond to one aspect of the Plaintiff's memorandum which is factually incorrect.

In the Plaintiff's memorandum she states that she has two claims before this Honorable Court, an Equal Protection claim against the City of Boston and Fourth Amendment claims against the City, Suffolk County, the Suffolk County Sheriff and one unnamed correctional officer. The Plaintiff then argues that while class certification should be granted under both theories this court should focus its attention on the Equal Protection argument "because resolution of this claim in plaintiff's favor will resolve the entire case in the most efficient manner." (Plaintiff's Reply Memorandum at 3). The Plaintiff recognizing that she does not have an Equal Protection argument against the county defendants, argues that this fact does not defeat class certification because in essence "[t]he City of Boston and Suffolk

Page 1 of 8

County are one in the same." (Plaintiff's Reply Memorandum at 5). This is not true. The City of Boston and Suffolk County are two separate entities and can not be identified as one entity.

I. ARGUMENT

## THE CITY OF BOSTON AND SUFFOLK COUNTY ARE TWO SEPARATE ENTITIES

The Plaintiff in her brief makes the following arguments in support of her theory that the " City of Boston and Suffolk County are one in the same." That the same individuals run the City of Boston and Suffolk County; That the treasurer of the City of Boston is the same for Suffolk County; That the City of Boston pays for all operating expenses for Suffolk County; and, That the City of Boston paid for the Nashua Street Jail.

It is not surprising that the Plaintiff makes the above arguments because it is easy to confuse the nature of the relationship between the City of Boston and the County of Suffolk. However, the distinction between the County of Suffolk and the City of Boston has remained consistent throughout the statutes of the Commonwealth, beginning as early as 1821, when the City of Boston Charter was established. It is well established that Suffolk County, (the cities of Boston, Chelsea, Revere, and the town of Winthrop), is administered by the County Commissioners, composed of the City Council and the Mayor of Boston. G.L. c.34, §4, and that the treasurer and auditor of Boston also serve as the county's treasurer and auditor. G.L. c.35 §§ 1, 42. However, the funding mechanism for Suffolk County is the same as it is for other Counties. The Suffolk County Treasurer administers funds appropriated to the Suffolk County Sheriff's Department from the Commonwealth of Massachusetts. (Exhibit 1, Affidavit of Thomas Yotts, Chief Financial Officer for the Suffolk County Sheriff's Department). While it is true that the treasurer for the City of Boston and for the County of Suffolk is the same person, the functions performed for each entity are separate from one another. (Exhibit 1, Affidavit of Thomas Yotts, Chief Financial Officer for the Suffolk County Sheriff's Department).

The executive powers of the Mayor, as county commissioner, are primarily "[t]o provide for erecting and repairing courthouses, jails, and other necessary public buildings within and for the use of [the] county". Hibbard v. County of Suffolk, 163 Mass. 34, 36 (1895). However, it is the Commonwealth of Massachusetts and not the City of Boston who owns the buildings which house the Suffolk County Jail and the Suffolk County House of Correction. (Exhibit 1). Contrary to the Plaintiff's assertions that the City of Boston paid for the Nashua Street Jail, the Commonwealth of Massachusetts provided the majority of funding to build the Suffolk County Jail located at Nashua Street. (Exhibit 1) Additionally, it is the Commonwealth of Massachusetts and not the City of Boston who appropriates funds for County Corrections. (Exhibit 1). Since 1990, the Commonwealth of Massachusetts has provided the majority of funding for the Suffolk County Sheriff's Department and in fiscal year 1999 provided in excess of ninety percent (90%) of the operating budget for the Department. (Exhibit 1). The City of Boston provides a small percentage of funds to the Suffolk County Sheriff's Department. (Exhibit 1). The Commonwealth of Massachusetts' FY99 line item 8910-0000 includes funding for the Suffolk County Sheriff's Department and requires Suffolk County through the City of Boston to expend an amount of six and seven-eights percent (6 7/8%) of the Sheriff's Department's total budget. (Exhibit 1).

Any power or control by the Mayor over the Suffolk County Sheriff's Department ceases at his role of County Commissioner. The executive powers of the mayor extends only to the "[o]fficers and boards of the city in their respective departments, under his general supervision and control." St.1885, c.266 §6 (emphasis added). The City of Boston Code states that, "The Mayor shall appoint heads of departments and members of municipal boards and fill vacancies therein in the manner provided by law." CBC Ord.2 §7.1. The statutes which give the Mayor the authority to establish the various departments of the city make no mention to the Suffolk County Sheriff's Department. (See, St.1895, c.449,§2). In

addition, the City of Boston Code - Ordinances is completely void of <u>any</u> reference to the Sheriff's Department.

The Sheriff of Suffolk County is not appointed by the mayor. Pub. Sts. c.10, §5. Nor may the Sheriff be removed by the Mayor, he may only be removed for the public good by a complaint to the justices of the Supreme Judicial Court. G.L. c.211, §4. The Sheriff, "[i]s not an officer of the city of Boston, and is not subject to the supervision and control of the mayor." Hibbard v. County of Suffolk, 163 Mass. 34, at 36 (1895). Rather, the Sheriff of Suffolk County is an elected official. G.L. c.37, §1; Art. XIX. of the Amendments to the Constitution. The Sheriff has the custody and control of the jail and house of correction in his county, and as keeper, appoints "[a]ll subordinate assistants, employees, and officers and shall be responsible for them." G.L. c.126 §16. It is quite obvious, as the Suffolk County Jail and House of Correction serve not only the residents of the City of Boston, but those of Chelsea, Revere, and Winthrop, who together elect the Sheriff of Suffolk County, that the Sheriff, and not the Mayor of Boston, maintains sole control over the appointment of employees at the Suffolk County Sheriff's Department. Clearly, as an elected official, the Sheriff of Suffolk County is not a "department head" under the supervision and control of the Mayor. This point was illustrated by the transfer of the control of the Suffolk County House of Correction from the Penal Institutions Department of the City of Boston to the Sheriff of Suffolk County on July 10, 1991 (Line Item 8910-0030 and Sections 356 to 363 of the Commonwealth's Fiscal Year 1991 Budget, "Transfer Legislation"). Under this legislation, the Sheriff of Suffolk County was given "sole and exclusive control" of the Suffolk County House of Correction.

The Supreme Judicial Court in Gordon v. Sheriff of Suffolk County, 411 Mass. 238 (1991)(Exhibit 2), confirmed that the Sheriff of Suffolk County and not the City of Boston is responsible for exercising dominion and control over the Suffolk County Sheriff's Department and that

the operation of county correctional facilities has always been a matter of state, regional and general concern and not a city concern. In Gordon the employees of the Boston Penal Department argued that they were City of Boston employees and that the legislature's transfer of the functions of the penal department from the penal commissioner to the Sheriff of Suffolk County violated the Home Rule Amendment. The Supreme Judicial Court rejected this argument for several reasons. The Court found that despite the fact that certain matters which pertain to Suffolk County are handled by the City of Boston, the penal department was a county agency and not a City agency for the following reasons: One, the funds for the new Suffolk County House of Correction were provided by the Commonwealth; Two, Deer Island received sentenced inmates not only from the City of Boston but from any of the four municipalities which constituted Suffolk County including Chelsea, Revere, and Winthrop; Three, pursuant to G.L. c. 126, the Commonwealth provides for county jails and houses of correction, including those in Suffolk County and pursuant to G.L. c. 127, the Commonwealth through its Commissioner of Correction regulates county correctional facilities; Four, the budget for operating Deer Island lists the appropriation for the penal institutions department among the "county departments," and not as one of the "City of Boston departments"; Five, the transfer legislation removing Deer Island employees from G.L. c. 31 and transferring control of the facility and the employees to the sheriff brought Suffolk County into conformity with other counties where the sheriff controls both the county jail and the house of correction and their personnel. Gordon v. Sheriff of Suffolk County, 411 Mass. 238, 241-242 (1991).

The Supreme Judicial Court found that the transfer legislation was not in violation of the Home Rule Amendment where the transfer of the Penal Institutions Department to the Sheriff of Suffolk County concerned state, regional and general matters. "Deer Island exists and functions as a county facility. In that capacity the institution serves four municipalities, of which Boston is one.

Operations of county correctional facilities has always been a matter of State and general concern as demonstrated by the State's regulation of county houses of correction under the provisions of G.L. c. 126, and the supervisory role given in G.L. c. 127 to the commissioner of correction over those institutions." Gordon, 411 Mass. at 245-246. The Court further found that the employees of Deer Island incorrectly relied upon McDade v. Department of Insts of Boston, 252 Mass. 184 (1925), for the proposition that the **city is the county and the Deer Island employees are city employees**. (Emphasis Added). The Court found that McDade preceded st. 1928, c. 389, which clarified that the penal institutions commissioner acts as a county official. Gordon, 411 Mass. at 248, footnote 12

The Plaintiff also makes the assertion that the same individuals run both the City and the County but as argued above the Mayor has no control over the running of the Suffolk County Sheriff's Department. In fact the courts have recognized that the City of Boston is not the public employer for Suffolk County under M.G.L. c. 258 the Massachusetts Torts Claims Act. Under G.L. c.258, §2, "public employers" are liable for the injuries caused by their employees' negligent and wrongful conduct in the course of their employment. Consolo v. George, 835 F. Supp. 49, 52 (D. Mass. 1993). While the City of Boston is a "public employer" within the meaning of the Act, it is not the "public employer" for Suffolk County. "The City of Boston has no ability to direct or control the employees of the Jailhouse, and, therefore, pursuant to G.L. c.258 §1, it cannot be considered the public employer of the Jailhouse employees for liability purposes." Medina v. City of Boston and Commonwealth of Massachusetts, No. 97-3187F slip op. at 6 (Suffolk Superior Court April 24, 1998). (Exhibit 3).

"The Suffolk County Jailhouse is under the exclusive custody and control of the Sheriff of Suffolk County and is not administered by the Commonwealth of Massachusetts or the City of Boston." Id. at 4. (Superior Court Justice Volterra granting summary judgment to the Commonwealth of Massachusetts and the City of Boston on April 24, 1998). Judge Volterra cited several laws in support

of the fact that the legislature created a statutory scheme that considers the two systems as completely independent of one another: Mass. Gen. Laws Ann. ch. 34, § 3 (West 1998) (mandating each county to provide suitable jails); Mass. Gen. Laws Ann. ch. 125, § 1 (West 1998) (distinguishing state correctional facilities from county correctional facilities); Mass. Gen. Laws Ann. ch. 126, § 16 (West 1998) (noting that sheriff has custody and control of jails and houses of corrections in his county). In support of his opinion granting summary judgment, Judge Volterra stated that the City of Boston has no direct control over the Suffolk County Jail employees. Id. at 7.

In conclusion, the Plaintiff's argument that "the fact that the equal protection claim is only against the City is not a basis to defeat class certification where the City of Boston and Suffolk County are one and the same" is inaccurate. As argued above the City of Boston and the County of Suffolk are two separate entities. This is confirmed in Gordon v. Sheriff of Suffolk County, 411 Mass. 238 (1991). The Defendants respectfully request that this Honorable Court decline to certify the Plaintiff's proposed class on the basis of her equal protection claim agains the Suffolk Defendants.

Respectfully Submitted,
Suffolk County, Richard J. Rouse,
Jane Doe
By their attorneys

_____
Rose King
B.B.O. #630973
Assistant General Counsel
Suffolk County Sheriff's Department
200 Nashua Street
Boston, MA 02114
(617)653-1100 x 330

_____
Melissa J. Garand
B.B.O. # 554727
Deputy General Counsel
Suffolk County Sheriff's Department
200 Nashua Street
Boston, MA 02114
(617)635-1100 x328

Date: 10/27/99

## Certificate of Service

I hereby certify that on this date I have caused a true copy of the foregoing document to be served on Attorney Howard Friedman, 90 Canal Street, Boston, MA 02114 by hand.

Signed under the pains and penalties of perjury this 27 day of October, 1999.

*Rose K.*
Rose E. King

# AFFIDAVIT OF THOMAS YOTTS

1. My name is Thomas Yotts. I am Chief Financial Officer for the Suffolk County Sheriff's Department. I have held this position since 1986. As Chief Financial Officer, I am responsible for all financial operations of the Suffolk County Sheriff's Department.

2. The Commonwealth of Massachusetts appropriates funds for County Corrections. Since 1990, the Commonwealth of Massachusetts has provided the majority of funding and in fiscal year 1999 provided in excess of ninety percent (90%) of the operating budget of the Suffolk County Sheriff's Department. The City of Boston provides a small percentage of funds to the Sheriff's Department. The Commonwealth of Massachusetts FY99 line item 8910-0000 includes funding for the Suffolk County Sheriff's Department and requires the County of Suffolk through the City of Boston to expend an amount of six and seven-eighths percent (6 7/8%) of the Sheriff's Department's total budget. Additionally, the Suffolk County Sheriff's Department receives a small percentage of its funding from grants and from the Suffolk County Deed Excise Tax.

3. The Suffolk County Treasurer administers funds appropriated to the Suffolk County Sheriff's Department from the Commonwealth of Massachusetts. Although the Treasurer for the City of Boston and for the County of Suffolk is the same person, the functions performed for each entity are separate from one another.

4. The Commonwealth of Massachusetts owns the buildings which house the Suffolk County Jail and the Suffolk County House of Correction. The Commonwealth of Massachusetts provided the majority of the funding required to build the Suffolk County Jail located at Nashua Street.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS TWENTY – SEVENTH DAY OF OCTOBER, 1999.**

Thomas Yotts,
Chief Financial Officer
Suffolk County Sheriff's Department

Thomas Yotts personally appeared before me and satisfactorily proved to be the person whose name is subscribed to as such in the within affidavit and he acknowledged that he executed the same freely, voluntarily, and without duress. Subscribed and affirmed before me this the 27th day of October, 1999.

Notary Public
My commission expires: 7/1/2005