UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-10418-MEL

|  |  |
|---|---|
| STEPHEN SCANLON,<br><br>*Plaintiff*<br><br>v.<br><br>ANDREA J. CABRAL, individually and in her capacity as Sheriff of Suffolk County, THE COUNTY OF SUFFOLK, and the CITY COUNCIL OF THE CITY OF BOSTON<br><br>*Defendants* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF PLAINTIFF STEPHEN SCANLON IN FURTHER
SUPPORT OF OPPOSITION TO MOTION TO DISMISS**

I.   Introduction

This is an action is brought by a Senior Investigator for the Suffolk County Sheriff's Department ("Sheriff") who served the Department for twelve years with an unblemished record and a long history of accomplishment and commendations. On November 14, 2003, he was terminated after a Constitutionally inadequate, brief hearing at which he was not permitted to present or cross examine witnesses or produce other evidence and was not notified of his appeal rights. When he requested from the Defendant City Council of the City of Boston ("City Council") the post-discharge hearing that is constitutionally required and that state law requires that counties provide their employees, the City Council denied his request, and told him he had no right to any further hearing.

Mr. Scanlon then filed suit against the Suffolk County Sheriff, Suffolk County, and the City Council on the basis of his statutory and Constitutional right to a full evidentiary hearing on the merits of his discharge as well as on the basis of state and federal wage statues. Among the remedies he sought was an injunction ordering the City Council to provide him a post- termination hearing. Two defendants, Suffolk County and the City Council have filed a joint motion to dismiss on the grounds that the Sheriff of Suffolk County has the responsibility for supervising employees in the Mr. Scanlon's position. At the hearing on this joint motion, the Court asked for additional information regarding the constitutionality of the statute, Massachusetts Acts of 1991, ch. 138, §361, 362, 363(a)-(c) ("1991 statute" or the "transfer legislation"), that purports to give the Sheriff of Suffolk County the responsibility for supervising employees in Mr. Scanlon's position.

For the reasons set forth therein, the plaintiff contends that an application of the 1991 statute that denies him a post termination hearing before a neutral fact finder, one that includes the ability to present or cross examine witnesses, produce evidence, and receive notification of appeal rights, deprives him of the Fourteenth Amendment's guarantee of procedural due process.

II. The Court Should Find that the 1991 Statute Created for Suffolk County Penal Employees, Like Mr. Scanlon, an Interest in Continued Employment Secured by Certain Job Security Provisions that was to be Safeguarded by Procedural Due Process.

Mr. Scanlon was hired by the Suffolk County Sheriff's department in September of 1991. For the first seven years, he served as a corrections officer in the Suffolk County house of correction. His most recent position, prior to his wrongful termination, was as an investigator in the Suffolk County sheriff's investigation division. Prior to Mr. Scanlon's date of hire, legislation enacted in 1991 transferred supervision and control of all penal employees, including corrections officers and other employees within the Suffolk County house of correction,[1] from the penal institutions department of Boston to the Suffolk County sheriff. 1991 Mass. Acts c. 138, § 362; see also *Correction Officers Local 419 v. Weld*, 768 F.Supp. 397 (1991).[2] The 1991 statute also removed these same employees, and all future employees, from coverage under M.G.L. c. 30, §§ 9A or 9B, c. 31, and c. 35 §§51, 56, each of which prohibits in various ways the termination of public employees without just cause. *Id.*[3]

Prior to the passage of the 1991 statute, in accordance with c. 35, §§ 51 and 56, all Suffolk County employees, with a few managerial exceptions not

---

[1] At the time of the 1991 statute, the house of correction was located on Deer Island. *Weld*, 768 F. Supp. at 398. Currently, the house of correction is located at South Bay in Boston.

[2] While supervision and control of the penal employees has been transferred to the Suffolk County sheriff, "Deer Island [South Bay] exists, and functions as, a county facility." *Gordon v. Sheriff of Suffolk County*, 411 Mass. 238, 248 (1991).

[3] Chapter 30A, §9A applies to veterans with at least three years of service; c. 30A, § 9B to permanent Commonwealth employees in numerous state agencies; c. 31 to employees with civil service protection; and c. 35, §§ 51, 56 (the former to county employees generally, the latter to Suffolk County employees).

3

applicable here, who had completed at least five years of service could not be discharged from such employment except for just cause and for reasons specifically given in writing by the appointing authority. M.G.L. c. 35, § § 51, 56. In addition, an employee being discharged for cause was entitled to a full hearing prior to the termination. *Id.* at § 51. The body designated to provide post termination hearings for Suffolk County employees was the defendant City Council. *Id.* at § 56, Notwithstanding the statutory exclusions described above, however, both the language of the 1991 statute and subsequent case law interpreting its impact make plain that the Massachusetts Legislature did not intend to exclude Suffolk County penal employees from the property interest in continued employment secured by the job security provisions afforded to and enjoyed by all other county employees.

It is well established that a public employee has a constitutionally protected property interest in his continued employment when he reasonably expects that his employment will continue. *Dasey v. Anderson*, 304 F.3d 148, 157 (2002); citing *Cummings v. South Portland Housing Authority*, 985 F.2d 1, 2 (1993). An enforceable property interest in continued employment can exist only if the employer, by statute or contract, has actually granted some form of guarantee. *Bishop v. Wood*, 426 US 341 (1976). The 1991 statute not only preserves in some instances property interests that prior to the transfer were already afforded to some penal employees but actually creates new property interests in continued employment secured by certain job security provisions for all Suffolk County penal employees in general.

4

For instance, the 1991 statute provides a mechanism for those penal employees at the time of the transfer, with or without previously acquired tenure pursuant to the civil service laws, to achieve "permanent [employment] status". 1991 Mass. Acts, c. 138, § 362(a). This language demonstrates that the Legislature neither intended nor desired to transform long-term employees into at-will employees and eliminate their hard earned property interest. *Id.* Court decisions subsequent to the enactment of the 1991 statute support this interpretation.[4] In *Weld,* for instance, the District Court held that the 1991 statute's exclusion of Suffolk County house of correction employees from tenure rights under M.G.L. c. 31, the civil service laws, passed constitutional muster because "other statutes provide some of the members with similar protection." *Weld*, 768 F.Supp. 397, at 398; *citing* Stat. 1960 c. 135 (applies to employees with at least seven years of service); M.G.L. c. 30 § 9A (applies to employees with at least three years of service who are veterans). The fact that such employees excluded from tenure provisions under the civil service laws were afforded similar rights elsewhere was critical to the holding in that case. *Id.* Here, when drafting the 1991 statute, the Legislature, concerned that employees with established, or near to established, tenure under the civil service laws would lose such rights subsequent to the passage of the statute, in effect, secured their interest by creating a mechanism for such employees to achieve "permanent

---

[4] There is also support in Supreme Court Jurisprudence. In *Bishop v. Wood*, 426 U.S. 341, 345 (1976), the Supreme Court held that a North Carolina statute providing that a "permanent employee may be discharged if he fails to perform work up to the standard of his classification" may fairly be read as conferring a property interest upon the employee.

5

status" similar to what they had or would have received under the civil service laws. 1991 Mass. Acts c. 138, § 362(a).

The 1991 statute also provides that "all appointments, transfers, terminations and promotions shall be made in accordance with guidelines and regulations promulgated by the sheriff of Suffolk County." *Id.* at § 363(c). These guidelines and regulations apply not only to positions impacted by the transfer legislation but also any successor positions later filled or created, such as that filled by Mr. Scanlon. *Id.* The Court can glean from the language of the statute that these guidelines and regulations were meant to compensate for the fact that penal employees, though also employed by Suffolk County, were being excluded from job security and other protections afforded to county employees under G. L. c. 30, § § 9A or 9B, c. 31, and c. 35. *Id.* The inclusion of this language strongly supports the inference that the Legislature, while stripping protections away from penal employees, intended for these new provisions pertaining to job security to take their place. *Id.* In doing so, the Legislature thereby created in penal employees a "legitimate claim or expectation of entitlement," *i.e.*, property interest, to employment that is secured by guidelines and regulations with respect to appointments, transfers, and terminations. *See Board of Regents v. Roth*, 408 US 564 (1972).

Further bolstering the assertion that the Legislature did not intend to deprive penal employees of a property interest in job security, the 1991 statute specifically and simultaneously placed "house of correction" employees under the protective provisions of the Massachusetts Act of 1960, c. 135 ( "1960 statute").

1991 Mass. Acts, c. 138, § 361; see also *Gordon v. Sheriff of Suffolk County*, 411 Mass. 238, 240 (1991). Under the 1960 statute, prior to the transfer legislation, certain delineated employees [5] within the Suffolk County Jail who have held their position for more than seven years are protected against arbitrary termination. 1960 Mass. Acts, c. 135. By placing the house of correction employees under the provisions of the 1960 statute, the Legislature intended to "bring these employees into conformity with the employees at the Suffolk County jail" thereby making all Suffolk County penal employees subject to the same laws and standards. *Gordon*, 411 Mass. at 239.

However, when the Legislature placed "house of correction" employees under the provisions of the 1960 statute, it did so without changing or adding to the list of jail positions covered by the statute. One can infer that either the Legislature wanted all house of correction employees to be protected under the 1960 statute, or certainly at a minimum, positions within the house of correction analogous to those listed for the jail to be covered. Even if the latter, it is clear that the Legislature at least intended the 1960 statute to cover positions like that of a correction officer where the analogous position, "jail officer," was covered in the Suffolk County jail.

In sum, Mr. Scanlon, both as a correction officer and later as an investigator, had a statutorily derived property interest in continued employment

---

[5] The list includes: chief officer, assistant chief officer steward, assistant chief officer administrator, assistant chief officer hospital supervisor, assistant chief officer, jail officer, jail officer clerk, jail officer electrician, jail officer photographer, jail officer receiver, jail officer storekeeper, jail officer assistant steward, jail officer chief officer plant engineer, jail officer engineer, jail officer steam fireman, head clerk, chief matron, assistant chief matron, and matron and female nurse. 1960 Mass. Acts, c. 135.

secured by certain job security provisions like guidelines for appointments, transfers, terminations, and promotions. As such, it is well settled that this property interest may not be subsequently terminated without appropriate procedural safeguards. *Cleveland Board of Education v. Loudermill*, 470 US 532, 538 (1985) ("*Loudermill*"); *Kercado-Melendez v. Aponte-Roque*, 829 F.2d 255, 262 (1987).

III. The Court Should Find that the 1991 Statute is Facially Invalid Since it Purports to Eliminate Any Protection for the Plaintiff's Vested Property Interest; the City Council Remains as the Only Logical Choice to Provide Mr. Scanlon a Due Process Hearing on the Merits of his Termination.

The Supreme Court has held that a state may not legislatively define away the due process rights associated with public employment, even in the very statute which creates the employee's property right in continued employment. *Loudermill,* 470 U.S. at 538. Instead, the right to due process "is conferred, not by legislative grace, but by constitutional guarantee." *Id.* In *Loudermill*, under Ohio law, a classified civil servant could be terminated only for cause and could obtain administrative review only after the discharge was complete. *Id.* Restating the constitutional standard that "something less" than a full evidentiary hearing is required prior to an adverse administration action for a public employee with a property right in their employment, the Court found the Ohio statute unconstitutional where it required review only post discharge. *Id.* Thus, regardless of the type of property interest, if the procedural due process protections are triggered, the timing and the nature of the required hearing are

8

determined according to constitutional standards and not by reference to state laws.

Here, the 1991 statute removes all penal employees from the coverage of various chapters of the Massachusetts General Laws that set forth adequate constitutionally-required due process mechanisms for terminations. 1991 Mass. Acts, § 363 (c) ("…positions transferred to sheriff of Suffolk County … shall not be subject to the provisions of …M.G.L. c. 35 … [and other chapters]"). Under M.G.L. c. 35, § 51 a Suffolk County employee being discharged for cause is entitled to a full hearing prior to the termination. The body designated to provide post termination hearings for county employees is the defendant City Council. M.G.L c. 35, § 56. Under the 1991 statute, the Legislature provided no substitute provision for the elimination of these mechanisms for Suffolk County penal employees: the Sheriff is left exclusively responsible for creating the guidelines governing the terminations, but the Act does not specify who will conduct due process termination hearings. M.G.L. c. 1991, § 363 (c). Although it fails to delegate authority to any body to provide due process to affected employees, the 1991 statute, as explained above, does not extinguish a penal employee's property right in his continued employment. *Id.*  In fact, it creates a property right in continued employment secured by certain job security provisions like guidelines for appointments, transfers, terminations, and promotions. *Id.*

By removing all penal employees from the coverage of various chapters of state law that set forth adequate constitutionally-required due process mechanisms for terminations, the 1991 Act does precisely what *Loudermill*

prohibits: it eliminates not a penal employee's property right in continued employment but the due process protections for that right. *Contrast Loudermill, supra,* with Mass. Acts of 1991 § 363 (c). As such, the 1991 statute cannot constitutionally deprive Mr. Scanlon of his property interest and can have no application to his termination. Therefore, *some body* must provide Mr. Scanlon with a due process hearing on the merits of his termination. None has a clear statutory mandate to provide such a hearing to him, but the City Council at least has the authority to do so for Suffolk County employees, making it the most logical candidate to provide the remedy in this case.   M.G.L. c. 35, § 56.

IV.   <u>Even if the Court Finds that the 1991 statute is Facially Constitutional, Because the Pre-Termination Hearing Afforded to Mr. Scanlon By the Sheriff was Constitutionally Inadequate, the City Council is a Necessary Party for Post-Termination Relief</u>

The Suffolk County Sheriff, Andrea Cabral, violated Mr. Scanlon's right to due process where he was terminated after an inadequate and brief hearing at which he was not permitted to present or cross-examine witnesses or produce other evidence, and then subsequently denied a post termination hearing before the City Council.

It is well settled that a public employee with a property interest in continued employment may not be terminated without appropriate procedural safeguards. *Loudermill*, 470 US at 538. These appropriate procedural safeguards include that "an individual be given an opportunity for a hearing before he [or she] is deprived of any significant property interest." *Id.* at 542. The Court has held that an actual pre-termination hearing, though necessary, need

not be elaborate. *Loudermill,* 470 US at 545. Specifically, "something less than a full administrative hearing," including an oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story, is sufficient prior to adverse administrative action where the employee is later entitled to a full administrative hearing appropriate to the nature of the case. *Id.*

In determining the minimal guarantees required by due process, the Court often uses a balancing test and takes into account three factors: (1) the significance of the private interest; (2) the extent to which additional procedural safeguards would have reduced the risk of error; and (3) the public interest in resolving the matter quickly and efficiently. *Matthews v. Eldridge,* 424 U.S. 319 (1976); *see also Goldberg v. Kelly,* 397 U.S. 254, 263 (1970) (formality and procedural requisites for hearing can vary depending upon importance of the interests involved and nature of subsequent proceedings).

While the required process may vary according to the nature of each case, a number of Federal circuit courts have agreed on certain safeguards that together ensure due process in cases involving the termination of a tenured individual's employment. *Riggins v. Regents of the Univ. of Neb.,* 790 F.2d 707, 712 (1986); *Nevels v. Hanlon,* 656 F.2d 372, 376 (1981); *Rosewitz v. Latting,* 689 F.2d 175, 177 (1982); *Ferguson v. Thomas,* 430 F.2d 852, 856 (1970). See also: *Harris v. Board of Trustees of State Colleges,* 405 Mass. 515, 520 (1989). These safeguards are the following: (1) clear and actual notice of the reasons for termination in sufficient detail to enable him or her to present evidence relating to

them; (2) notice of both the names of those who have made allegations against the employee and the specific nature and factual basis for the challenge; (3) a reasonable time and opportunity to present testimony in his or her own defense; and (4) a hearing before an impartial board or tribunal. *Id.*

In the case at hand, the defendants failed to provide Mr. Scanlon with any post-termination hearing to challenge the decision to terminate his employment. Because Mr. Scanlon was not granted a post-termination hearing, the pre-deprivation hearing must afford complete procedural safeguards. *Goldberg*, 397 US at 254. The Department held Mr. Scanlon's pre-termination hearing on November 13, 2003, just three days after informing him that it intended to terminate him effective November 14, 2003. Using the standard to ensure due process in cases involving the termination of a tenured individual's employment, as discussed above, this pre-termination hearing was constitutionally inadequate thus violating Mr. Scanlon's right to due process for several reasons.

First, the hearing officer appointed by the Sheriff, Richard D. Tranfaglila, the department's Director of Personnel, failed to allow Mr. Scanlon reasonable time and opportunity to present testimony in his own defense. As stated previously, the Department held Mr. Scanlon's pre-termination hearing on November 13, 2003 on three days' notice and fired him, as promised, the next day. Mr. Scanlon's supervisor, Victor Theiss, and Mr. Scanlon's own representative, each made an oral presentation to the hearing officer. This was the entire extent of the hearing. Mr. Scanlon was not permitted to present or cross-examine witnesses or produce evidence in his own defense. As Mr.

Scanlon's termination was based on alleged conduct during an off-duty argument, his inability to present outside witnesses and additional evidence to the hearing officer was in fact fatal to his defense.

Second, the hearing officer was not a neutral decision maker as required by law. The Supreme Court has held that while fairness and accuracy are not always threatened simply because the hearing examiner, or party appointing such, is the supervisor of an employee, the bias of the adjudicator may render the hearing unconstitutional. *Arnett v. Kennedy*, 416 U.S. 134 (1974)(Powell concurrence as to post-termination proceedings, *id.* at169; White concurrence as to pre-termination hearings, *id.* at 196). Here, it was the Sheriff who had made the decision to terminate Mr. Scanlon, and the hearing officer was chosen by the Sheriff herself. As the Director of Personnel and a high-level employee of the Sheriff, Mr. Tranfaglila would inevitably be privy to the same information as the Sheriff and therefore came to the hearing with knowledge, and consequently an opinion, of Mr. Scanlon's alleged conduct during an off-duty argument. This is precisely what public employers seeking to terminate their employees must avoid: situations where the bias of the adjudicator will render them incapable of making an impartial decision.

Lastly, and critically for the purposes of the present motion, in its termination letter, the Sheriff failed to provide the Plaintiff with notice of his appeal rights as provided by law. Further, when Mr. Scanlon requested that the City Council provide him a post termination hearing pursuant to M.G.L. c. 35,

§§ 51 and 56, the Council denied this request and informed Mr. Scanlon that he had no right to any further hearing. As stated previously, because Mr. Scanlon has not been afforded a post-termination hearing, the pre-deprivation hearing must afford complete procedural safeguards. *Goldberg*, 397 US at 254. For the reasons stated above, the pre-termination hearing certainly did not afford Mr. Scanlon his minimum due process guarantees. Again, *some body* must provide Mr. Scanlon with a due process hearing on the merits of his termination. None has a clear statutory mandate to provide such a hearing to him, but the City Council at least has the authority to do so for Suffolk County employees, making it the most logical candidate to provide the remedy in this case.
M.G.L. c. 35, § 56.

### V.  Conclusion.

For these reasons, and the reasons stated in the Plaintiff's Opposition to the Defendant's Motion to Dismiss, the motion of Defendant City Council of the City of Boston to dismiss should be DENIED.

>Respectfully submitted,
>
>STEPHEN SCANLON,
>
>By his attorneys,
>
>_____
>David Rome, BBO # 426400
>Leah Marie Barrault
>PYLE, ROME, LICHTEN
>   & EHRENBERG, P.C.
>18 Tremont Street, Suite 500
>Boston, MA 02108
>(617) 367-7200

Dated: October 28, 2004

14

Certificate of Service

I hereby certify that I served Memorandum of Plaintiff Stephen Scanlon in Further Support of Opposition to Motion to Dismiss, by mailing a true copy of same via first class mail, postage prepaid, upon all attorneys and parties on record.

Signed and sworn to under the pains and penalties of perjury this 29th day of October, 2004.

David B. Rome